May it please the Court, Tripp Johnston of Federal Defenders of San Diego on behalf of Mr. Navarro. When a person in Mr. Navarro's position, a confidential informant whose life is literally on the line when their identity is compromised, when that person can draw reasonable inference from the objective facts that his identity has been compromised and he fears for his life, he should not be precluded from the protections of a duress defense absent some magic words, do this or we will kill you. Counsel, I thought your argument on that point was very good. It certainly is true that when the tables are turned and the government's trying to prove that a defendant made a threat, they don't require express words, I am going to kill you unless you do such and such. What bothered me was it looked like he had a really good chance to escape when he got to the border with his wife. All he had to do was turn himself in at the border or make a call to his handlers. And I will address that point. That was the government's second response that they believe that the duress defense should not have been given in the first instance. And I should start by saying that it is for the juries and absent a rare case for them to be presented with a defense. That was contento. I'm really addressing whether it was harmless. Excuse me? I'm really addressing whether it was harmless for the judge not to have educated the jury further on whether the threat has to be expressed. Well, I think that I can try. I do not think it was harmless under the constitutional standard because this did impinge upon Mr. Navarro's. What was not harmless? You didn't object to the instruction that was given on the defense that you raised. So you got a proper instruction to which you did not object. That's correct. So where is the constitutional error here? The constitutional error was the court permitting the prosecutor to tell the jury there is an additional element. In this case, the threat must be explicit and verbal. Okay, but then the court immediately stepped in when the objection was raised and said, Well, look, the parties are entitled to argue, but it's the instruction that you've got to pay attention to and read them and consider them. What more was the court obligated to say at that point? To be absolutely clear, what the court said, it is for the parties to argue their interpretation of the law. It's Hornbook law, whether we're talking about Marbury v. Madison or Spar v. United States. It's the province and the sole province of the court to determine what the law is. And when the court, not sustaining my objection, told the jury that the attorneys can argue their interpretation of the law, she was giving up that province erroneously, and she was allowing the jury to determine the law. That cannot be. Counsel, I think what you've got here is you've got a proper instruction. You've got a statement by the prosecutor that, well, we haven't resolved it in the Ninth Circuit, but it could well be an incorrect statement of the law to the jury by the prosecutor. And I think what your argument has to be is that the judge's correction of the prosecutor's statement was inadequate. We know from the jury's note that it was focused on element one, and that all they had before them was the prosecutor saying that requires an express threat and the judge saying follow the instructions, which really don't say one way or the other and don't answer the instruction. Don't answer the jury's question and don't change what the prosecutor said. Now, what I want to know is what is your best case for the proposition that when an instruction is correct, but a prosecutor makes an incorrect statement of the law and the judge inadequately educates the jury about its incorrectness, reversal is required. Well, I have even a better case than the one that would assume that hypothetical, the one that I cited in my opening brief that the government ignored in the response brief, and that's Cegna. And in Cegna, the court properly instructed the jury. The defense attorney properly articulated the law. The prosecutor, in closing rebuttal, shifted. This case, I believe, if I recall the facts correctly, involved an insanity defense, and the prosecutor improperly shifted the burden onto the defendant to prove some aspect of that defense. There was no objection by the defense attorney to that statement by the prosecutor. And on plain error review, the Ninth Circuit found that the error warranted reversal. This statement of the law by the prosecutor, absent any statement by the court. Any statement by the judge here? I don't recall whether, if there's any difference between the laws I stated to you and the law stated by the counsel, my ruling, my statement controls. No. Her contemporaneous statement to the objection was that the prosecutor can argue his interpretation of the law. It couldn't have been more clear to the jury. And just to return to ‑‑ So if she had said, instead of the law, substituted the word evidence, that would have been okay? The parties are entitled to argue their interpretation of the evidence? Honestly, I don't think that that would cure the error. It certainly would have been a better attempt by the district court to address this issue. The court only cites two cases. I'm sorry. I'm not understanding it. What would be wrong with telling the jury at that point that it's perfectly okay for the parties to argue the evidence in light of the instruction? I thought that's what lawyers do. And that would be appropriate. I guess what I'm trying to say, Judge Tallman, is that that response wouldn't address the objection, which was that the prosecutor's statement in the state of the law. I think she could absolutely say that. I'd still be here today to say that. But our cases do require evidence of a direct threat, do they not? Although the threat can be implicit, there still has to be an immediate threat of harm. That's what the law says. And I don't want to quibble with the terminology, but my argument is that when the prosecutor says it must be explicit, it must be verbal, it must be, and he said this is what is important, they must say, do this or we will kill you. He's gone beyond talking about direct threats. And if my briefing suggests otherwise, I want to be clear today. It's that he's telling the jury it has to be explicit and verbal, and there simply is no support for that in the law. But didn't we say, I thought we just issued an opinion, Vasquez-Landevar, May of 2008, where we talk about the requirement that that first element must be immediate, must be an imminent threat of harm. That is absolutely correct. That gives rise to the well-grounded fear. Yes, and the government cites Vasquez-Landevar for the proposition that there must be a figurative gun held to the head. So wouldn't, I'm still having a hard time with your argument here, wouldn't an argument that there was no evidence that anybody told him that, you know, do this or we will kill you, that is an example of what we talk about in Vasquez-Landevar, isn't it? No, Vasquez-Landevar did not address this issue. My question, isn't that an example of an immediate and well-grounded fear of imminent harm? Somebody puts a gun to your head and says do this or we will kill you? Well, certainly, had they actually put a gun to his head, that would be an example. Had they done something that would equate to the figurative gun to the head, that would be an example. Vasquez-Landevar addressed an illegal reentry case for someone from El Salvador who was threatened by El Salvadorian police officer, I believe because he had unraveled some corruption or something, was threatened by him in El Salvador and he wanted to make the argument, address defense in a trial for legal reentry into the United States, that some 53 days after this threat had been made, some thousands of miles away from the threat, the threat was still so immediate that he had to travel all the way from El Salvador through Mexico all the way to the United States and the court said, look, that's not an immediate threat. It was focused on the immediacy and there could be nothing more immediate in this case than the threat that Mr. Navarro faced. So I don't think... Let's talk about the threat because as I understand it, the threat emanates from a discussion that he had with Ruben, whoever Ruben is, over beers the night before and then your client believing based upon the statements that he heard Mr. Ruben make that they were onto him, right? Correct. That is the, in his mind, that is the basis for his fear that he says results in duress. The threat is that his identity has been compromised as an informant. Right. The fear is the, I think, beyond dispute conclusion that if your identity is compromised in this situation with these type of people, that death or serious bodily injury is a direct result. And the evidence was, not the night before, this is happening in a continuum. Mr. Navarro goes to Mexicali. He's told that he's going to pick up parts for a car. His role in this organization is a mechanic to get the cars. Well, he's also a drug smuggler as well, is he not, by his own admission? That's how he makes a living? Well, he has crossed drugs before. He did not dispute that. He described himself as a drug smuggler when he was booked before, didn't he? That's correct. And I'm not here to dispute that he was working in a smuggling organization, that he felt he was part of it. That's why he was... By his own lips, his primary role was that of mechanic. That's why they took him in. He was asked to cross drugs. I'm not disputing that. He was part of the drug smuggling organization. When he was asked what he did for a living, his answer was this. This, yes. Referring to drug smuggling. And I don't think that makes a difference. I agree he's part of this organization. He's... Well, the problem I'm having with your argument, and I think the reason that the jury didn't buy it, was that everybody who has cooperated with the government has a fear that they're going to be discovered. There's no question of that. But our law on duress as to this first element requires something more than just fear. There has to be an imminent threat. That is true. And I'm still having a hard time understanding why the hypothetical, if you can call it that, that the prosecutor used is not an example of what our case law requires. That may be an example of what the case law requires, but it's not the sine qua non of what duress can be and what the threat can be. And that's what he told me. He said, they have to say, do this or we will kill you. He told that to the jury. He said, this is the constraints of the law. And there was no evidence here that Rubin told him, either you cross these drugs or we will kill you and your family. That's correct. And the evidence also was that these drug smugglers would never be so explicit. Is the idea that once Rubin tells them we think there's a snitch and Navarro knows that he is, in fact, the snitch, putting two and two together Navarro knows that they're deciding who to kill? I think it's even more than two and two. It's the fact that Rubin even knew about the Las Vegas bust. I mean, we're talking that Mr. Navarro had been there only a day before it happened. I mean, this is a major operation that took place. He contributed to the takedown of a distribution point way inside the United States. He was flown all the way to Las Vegas. I mean, this was a serious deal. And when someone who's not supposed to know anything about that tells you, you're not here for parts, you're here to cross drugs in a car through Tijuana, a car registered in your name, which wasn't his experience and they ever did. And he says, oh, by the way, we really wonder who it is that gave up the Las Vegas house some six months before. I think he's in a situation where the objective facts can lead to the reasonable inference that he is threatened because his identity has been compromised. So I think the threat is satisfied here. And to return to your question, Judge Kleinfeld, you can't the first question about this being harmless or the concern about a reasonable opportunity to escape. Mr. Navarro did not have. I was thinking if I was a snitch and I was in Mexico and that the people in my conspiracy said things that made me think they were either on to me or would soon be on to me, I would welcome an opportunity to smuggle some drugs into the U.S. in a car registered to my name because then I could get out of the whole thing when I got to the border station. Well, I don't think that that's true. But just to back up and make sure we're not mistaking what's happening in Mexico. He has no protection in Mexico. Every government witness has. He had three police witnesses who testified to that. Every single one of them said yes, he's not safe in Mexico. But two of them also said that he wasn't necessarily safe in the United States either. And I think the trouble with this case, I mean, this is a very unique fact pattern for these border crimes and for duress. Can I ask a question? Yes. The jury seemed to have bought the second and third element. The real thing they seemed hung up on was the imminent threat, right? Yes. How do you tie what went on with the argument, legal arguments, et cetera, with what the jury seemed to be concerned about? Well, the first part is thank you, Judge Trager, for bringing up the note, because I think this helps answer Judge Kleinfeld's question. The note itself indicates that at least some rational juror felt that there was sufficient evidence on the reasonable opportunity to escape prong to get to this first element. And I can't sit here today. I don't really know that. Sometimes they just go in order. Well, let me suggest it's various. Well, they seem to have said that if we find two and three, can we find for the defense under arrest, except the implication being they didn't find one. So I'm trying to tie up your argument with the jury's note, because maybe to me that's rather important because it shows possibility of prejudice, but I'm having a little trouble figuring out the relationship. Well, first, I can't say exactly what that note meant. I understand, but you're a lawyer. And my argument is that can we find the defense form on items two and three suggests that at least one juror has come to that conclusion. I can't tell you that that's guaranteed how it happened. Judge Kleinfeld, your hypothetical may be another reasonable inference. But under any standard for harmless error, whether it's harmless beyond a reasonable doubt or whether the government's proved by preponderance is more likely or not the error didn't affect the verdict, I think that's very strong evidence that would preclude the Court from finding under harmless error analysis that, at least under well-founded fear, that there was completely insufficient evidence. Now, Judge Trager, I think that they were hung up on the first element. This note suggests that they did address all three elements and came back to it. And whether it's the immediacy of the threat or the nature of the threat itself, I think there couldn't be a more clear case of the immediacy of the threat. I mean, this is happening in real time. It's not like any case the Ninth Circuit has decided where someone was told. Where's the threat again? I'm sorry. The threat, I understand subjectively he felt threatened. But where is the objective evidence? It's the very things that I described. And get some extra time. You're already over. So you're getting extra time. Well, I would like the opportunity to reserve some time for rebuttal. But I do want to answer the question. Why don't you just figure you'll have 30 seconds for rebuttal even though you're over.  Thank you. May it please the Court. My name is Andrew Shopler on behalf of the United States. In this case, the evidence in the prosecution's case was extremely clear, overwhelming that the defendant was a double-dealing, confidential informant. Counsel, is. . . Sorry. I'm trying. I'm trying. Okay. Counsel, I have two things that trouble me. One is the prosecutor's statement. I'm not aware of any law requiring that a threat be expressed and verbal to be adequate for duress. And the Ninth Circuit case seems to speak, at least under my reading, to immediacy rather than to explicitness. Is there any authority for what the prosecutor said, that it has to be explicit? Well, first of all, I don't think that the prosecutor was saying that it needed to be explicit, and it's certainly not our position. But he said it had to be in so many words. Here was the actual quote that the prosecutor said. He said, and this whole section of the argument, I believe, was aimed at whether the threat is immediate or general. Here it is. I've got the words right here. They have to say, do this or we will kill you. Correct. And if you back up on that same quote, he's talking, I think, about the immediacy versus a generalized threat. He said there has to be an immediate threat, and there has to not just be a generalized threat. Again, being a confidential informant might be dangerous, talking about a generalized threat. Somebody might even threaten to kill you if they found out that you were a snitch. But what's important here is that they have to say, do this or we will kill you, and there's no evidence. Now, that's how I look at it. The prosecutor tells the jury, they have to say, do this or we will kill you, and there's no evidence that that happened. And then the judge tells the jury, look at the instructions, which don't say one way or the other. Now, what I want to know from you is, is there authority that it's true that they have to say, do this or we will kill you? Leaving aside immediacy, I'm talking explicitness. And second, what is your best authority for where the instruction is correct, but the prosecutor in his argument misstates the law and the judge fails to correct the misstatement? First of all, I do not believe the threat has to be explicit, so I'm not going to quote an authority to the court on that. I believe it can be implied or explicit. I think in this argument, the prosecutor didn't – he said that they have – I think he was tracking essentially the language of Vasco's Landover, which says that the defendant's persecutors have to say something that is the equivalent of putting a gun to the defendant's head. And he didn't say they had to say this directly or indirectly, but the gist of what he was saying is they have to be threatening to kill you So I don't think he used the term explicit or implicit. I think perhaps he should have used the word convey rather than say. But if you look at the entire closing argument, I don't think it was aimed at explicit versus implicit. It was talking about an immediate threat versus generalized. That would be a much stronger argument, the one that you're making now, if the jury hadn't asked a question focusing on the threat. Well, and I'd like to address the jury note, and I think you may have brought it up, Your Honor. I don't think the court can read into that, that the jury has – didn't have a problem with elements two and three. As Your Honor stated, they could have simply addressed the first element of immediate threat and found that that was lacking. And then they wanted to find out, do we even need to move on to elements two and three? That's not how I read the note. Well, I don't think we can read into what they were thinking. I think it's certainly possible that they wanted to ask the court, do we need – do we need to move on to deciding elements two and three if we're not The question was, do we have to find all three, wasn't it? Right. And if you found that the first one doesn't apply, then you might ask the judge, do we need to find all three? Because then they don't need to move on to elements two or three. But under the law, this Court shouldn't be trying to divine meaning from a note that can be interpreted various ways. We can't know what their deliberations were. We can't know what they were thinking. So – Well, if I were a jury, I mean, based on the facts, I would have probably focused on no reasonable opportunity to escape. It's a little odd that they got hung up on immediate threat. Well, let me talk – I do want to talk about – This is what the argument in front of the jury was all about. Well, I do think that the immediacy is extremely lacking here because – and this is perhaps, I think, the biggest thing that came out during the cross-examination – was that someone who thinks he is an immediate threat of death and is going to die in perhaps the next five or ten minutes is not going to take a nap. And the defendant – You made that argument in the brief, and I really couldn't see it. I'm happy to show the records. One thing, he'd been drinking, and that makes people sleepy. For another thing, people often react to stress by sleeping. And for another thing, no matter how stressed you are, sometimes you're tired and you fall asleep. Well, he said – How about you fell asleep the nights before many of the highly stressful events of your life? I know I have before highly stressful events of mine. There's a difference between highly stressful and about to die. I have a brother who's a Navy SEAL and has been in combat situations where he had to stay up for six days straight. And the threat of death will keep you up. Now, I'm not saying that Mr. Navarro needs to have the stamina of a Navy SEAL, but he had to stay awake not for six days, but six minutes. His wife is driving, and he falls asleep. He got to his house, and here was the quote. And it's in Excerpts of Record, page 601. Once he got to his house, he said, I didn't even know if I was going to make it as far as the line. And he later testified it was a five- or ten-minute drive from his house to the line, the port of entry. I didn't even know if I was going to make it as far as the line. He thought he might die in the next five or ten minutes. He likes to be asleep when it happens. Right. I think if you have your choices on how to spend the last five or ten minutes of your life, if you want to spend it napping, then I don't think you need to worry about that. Lying in your sleep seems a whole lot better. But I don't think you can square him saying, I don't even know if I was going to make it as far as the line, and then in that five-dependent-minute drive him saying, I fell asleep the moment I got into the pickup. So I think the immediacy is lacking. I also don't think there was ever a threat here. He never mentioned duress during hours of interviews with various agents. And most of this was videotaped, hours of videotaped. He never mentioned duress. He mentioned a very detailed statement of how he got the car, how he dropped it off, how he got it back. Never said that he thought he was about to die. He never mentioned rubin. Are we talking about harmlessness now? I am talking about harmlessness and also the sufficiency of this defense. I think that... But he got the instructions, so whether he had enough evidence to get the instruction is beside the point. That's why I asked you if we're talking about harmlessness. I'm talking about harmlessness. I think there was no evidence that there was a threat. I think that the defense has sort of conflated. It seems to me that all you've got is the threat was not explicit and his sleeping impeaches his testimony that he felt imminently threatened. And what they've got is three cops say snitches die, and it was obvious from his talk with rubin that they'd figured out there was a snitch. And he knew he was the snitch. So it seems like just a legitimate jury question. I personally disagree. I think that the court should have excluded the defense because there cannot be an immediate threat. Well, first of all, I don't think that... If the guy really does want to kill you, it would be to his advantage not to tell you exactly when, where, and how, because that way I'll have to jump on you. Yeah. But I think here there's a difference between an actual threat and a threatening situation or a dangerous situation. The defendant's brief talks about essentially a dangerous situation, and I think that goes more to the well-grounded fear element, not the immediate threat element. There is a difference between... In all of the cases cited by the defense, there was an identifiable persecutor who made an identifiable threat, whether it was explicit or implicit, that figuratively held a gun to the defendant's head. We don't have that here. We have atmospherics. We have a situation that is admittedly dangerous, and for any confidential informant you're going to have a dangerous situation. That does not amount to an immediate threat. It may be a threatening situation. I also believe that the evidence rebutts his well-grounded fear element because he was not, in fact, scared. During his post-arrest statement, he wanted to get back out and be a C.I. again. He told the agents, I can give you lots of stuff more. He was not... Not only was he not mentioning... You strike me as just jury arguments subject to arguments the other way. Well, let me finally... Before you run out of time, there's one other issue. I think I mentioned I had two of them. What the magistrate judge told the grand jury struck me as very troubling. He just wrapped the U.S. attorney in his mantle and told the grand jury, he's going to give you all the exonerating evidence when that's not true. He told them basically to trust the U.S. attorney more than the law entitled them to trust the U.S. attorney. Now, what I want to know is, do you have a case that says it really doesn't matter because what the pettit jury does is determinative? I know that you have a case that says some similar language to the grand jury but not identical. It's not a structural violation. What I'd really like to have, and I don't recall seeing it, is a case that says it just doesn't matter because all they're doing is accusing the defendant and the pettit jury still has to determine whether the proof establishes guilt beyond reasonable doubt. Is there such a case? I would be happy to submit 28-J authority on that. Isn't there a Supreme Court decision, Costello against the United States, that somebody can be convicted, indicted on no evidence? Well, I'd be happy to submit 28-J on that. And you don't affirmatively mislead the jury? It looks to me as though you don't have to submit a 28-J, Costello. And I thought, in Navarro-Vargas, I think Judge Kleinfeld was referring to that case, we upheld the language about you can expect candor, honesty, and good faith in matters presented by the government attorneys. That's correct. We did cite that. That's the standard judicial conference-approved grand jury instruction, is it not? Correct. I would like to state on this argument, though, that I agree that it was not in accordance with the United States v. Williams, but there was no exculpatory evidence to present to the jury in this case. First of all, the United States did not know about the duress defense until opening statements in the trial. So that could not have been presented. And, in fact, the defense doesn't even raise that as something that should have been presented to the grand jury. Their brief only talks about the public authority defense. And as to the public authority defense, he disavowed it in his post-duress statement and then again on the stand. He said that he was not authorized to drive this load through. So those are the only two defenses raised by the defendant appellant in this case, and neither of them rise to the level of exculpatory evidence. Thank you, Your Honors. Thank you, counsel. Thirty seconds or less. I would just like to say that the grand jury argument is premised on the interference with the grand jury's prerogatives. It's well briefed. And the closest analog is Gonzalez-Lopez, the choice of counsel case from the Supreme Court. And I'll point the Court to the briefing on that. The Cigna case I mentioned earlier about the proposition for when the law has been properly instructed by the Court. The citation for that is 555F226. And I cited my opening brief at 26 through 27, at 38 through 39, and my reply brief at 10. Counsel, I didn't understand the citation to Gonzalez-Lopez. What does that support? That supports the argument that the traditional functioning of the grand jury is understood by Navarro-Lopez in his second incarnation here en banc, as well as the Supreme Court stated in Vasquez v. Hillary, the traditional functioning is frustrated when the jury is told, you don't have to bother with your investigative functions because you're going to get all the exculpatory information. Anything that cuts against the charge, you're going to receive. And the prosecutors have a duty to do it. The U.S. Attorney's Manual argument in the government's response brief I've responded to, I think, adequately in my reply brief, doesn't answer the concern. I thought there was another Supreme Court case besides Costello that made it clear that there is no obligation to produce exculpatory evidence. That's Williams, which the district judge, the grand jury judge, Judge Burns, who he violated Williams by basically exercising supervision. I mean, what he said is not Supreme Court law. And so we agree with the government that Williams doesn't require, doesn't even allow the court to do what the court did here. But Williams was concerned with an argument that said, you have to make them give this evidence to the grand jury. And they said, no, the Constitution doesn't require that. What I'm saying is when you tell them they're getting all that evidence, you've frustrated their traditional function. What do we do with the factual finding by the district court in which she denied your pre-trial motion or post-trial motion when she found, as a matter of fact, that there wasn't any exculpatory evidence at the point that the case was presented to the grand jury because your client had disavowed the public authority? Well, two answers. First, it doesn't matter. We've made a structural error argument. Well, it does matter if, as a matter of fact, there is no exculpatory evidence. We don't – sorry. No, I mean, I just – I don't see how you can have error if there isn't any evidence that should have been presented that's known to the prosecutor. Because we don't know what the grand jury would do. Vasquez v. Hillary, Navarro-Lopez says the jury can decide to charge a greater crime, a lesser crime. They can decide to charge no crime at all, even if there's adequate probable cause. And for those reasons, you simply cannot apply a harmless error analysis. I don't see what the error is in the face of the factual finding. That's where I'm losing you on your argument. I believe that there was exculpatory information. Okay, but you've got a factual finding that says no, so I guess – Well, then I would just argue that that's – That it was clear error for her to make that factual finding. Yes. Okay. Really, if you'll give me, like, ten more seconds, I just want to turn to a few points in the draft, because I think it was – It's 236. The best the prosecutor could say about reading that note was that the jury could have followed your hypothetical, Judge Keinfeld, even under the nonconstitutional error standard. They have to show by preponderance, it's more probable than not, that it didn't affect the verdict. So he can't even say that here today. But I would ask you to read the jury note. It doesn't just say do we have to find all elements. It says – Thank you, counsel. We've got it. I'm sorry. Thank you. We studied it. Thanks. U.S. v. Navarro is submitted.
judges: Trager, Kleinfeld, Tallman